Good morning. Your Honor, Sean McMillan, appearing on behalf of the plaintiff and appellant, Jill Randall, who is present with us in court today. I'd like to focus my argument on the first issue that was raised in the appellate brief, and that's the issue of integral participation. At least as to my understanding, integral participation is a theory of liability that extends liability beyond what may inure to the primary wrongdoer. In this particular case, that would have been Orange County social worker Maysha Hammond. And the way it extends the liability is if there is some third party who doesn't necessarily cause the violation of the right, or doesn't necessarily directly themselves violate the particular right in question, if they're an integral participant. But the judge gave that charge. He said that it has to be integral participation and not merely a bystander. Isn't that what the judge said? Affirmative. That's correct. It has to be an integral. What's wrong with that? Well, the problem that we have with that in the context of this particular case is that the way that the jury instructions, particularly number 13 and 15, interplay with the court's verdict form, it appears just on their face, according to the language, that the plaintiff must prove that the acts of the officer violated her particular rights under the Constitution. And that's not the standard under Boyd v. Benton. In fact, the third party officer in this case, his actions don't need to have themselves risen to the level of a constitutional violation. What did 13 say? Could you refresh my recollection? I've been focusing on 15, which has that integral participant and not merely a bystander. Yes, 13 says in order to prevail on her 1983 claim against Officer Watanabe, Ms. Randall must prove each of the following elements by a preponderance of the evidence. The first one is obvious that he acted under color of law. Number two is that the acts of Officer Watanabe deprived Ms. Randall of her particular rights under the United States Constitution. But then 15, you know, puts meat on that by essentially saying that in order for that to happen, he had to have taken an integral part and not merely a bystander. And as I read the record, he signed the petition authorizing the seizure in addition to going in and doing a security sweep, standing by the door where they were interviewing the kid and not letting the mother go in. Then he escorts the — after signing the petition, he escorts the child out the door. That's correct. That was the — Wasn't it? I would agree that under our theory of the case, that would be integral participation. So what's wrong? I mean, I don't know. I never heard of the notion that somehow a judge has to — that goes to two issues. First, it goes to the issue of harmless error, which you argue. But I don't understand the rule to be that just because a court uses some language in affirming a conviction, that somehow a district judge is bound to give the exact language of the charge, which he said he thought was confusing and legalistic. And he may be right. I'm not sure. I'm actually not sure what we're talking about when we're talking about a conviction. There was no conviction here. No, no. I'm just talking about the context necessarily. The fact that an appellate court, whether it affirms a conviction or it's in some other context, uses certain language does not necessarily mean that that language has to be incorporated in every charge. The ultimate issue is, is the charge that was given correct? I don't necessarily disagree with that. The problem here is that this court, the Ninth Circuit, in fact, in a recent case has said, when the court holds the plaintiff to a standard of demonstrating that the officer, who we're looking at an integral participation theory, that the officer's actions themselves violated the right, that that's error. And if we look at the jury verdict form here. Well, but the 15th said that he had to have played an integral role.  And not merely that of a bystander. And it seems to me it certainly captures the essence of what the Boyd language was designed to deal with. And in terms of harmless error, I don't know how much more integral a role he could have possibly played. He even signed the seizure order, aside from everything else that I suggested. I agree, Your Honor. And, in fact, if we had pursued a theory of direct liability for actually accomplishing the seizure himself in concert with Maisha Hammond, then the instructions, I don't know that we would necessarily have the same problem. But we're not looking at a direct theory of liability here. What we're looking at is an officer who, and there was conflicting evidence on the issue of whether he even signed the blue form, the application for petition. But we're not at the situation where we're saying the officer himself did the seizure. What we're saying is that he was there, he provided the muscle for it. In our view, these instructions taken in conjunction with the verdict form that was given to the jury was incomplete and misleading. Our verdict form, we believe, and that's at AER 1, page 99, I believe, is where it starts. Our verdict form would have dispensed with that problem in that we asked the jury there, number one, were her rights violated, Ms. Randall's rights violated? And, number two, did Defendant Stan Watanabe participate in the removal of XY from the custody of his mother, plaintiff Jill Randall, and or fail to intercede in the violation of her 14th Amendment rights? That would have dispensed with any confusion or any problem. The evidence was overwhelming on that score. I don't know what you're talking about. The evidence was overwhelming on Watanabe's involvement. He comes in. He does the security sweep. He stands by the door while they keep the mother separated from the child. He signs, according to my reading, he signs the petition authorizing the seizure, and then he escorts the kid to the door. How much more integral could it get? I don't disagree. I don't disagree with that, that that's integral participation. I think where, at least from our perspective, where the rub comes is that the jury, again, in my view, and I can see where we might disagree, the jury was left with this impression that we have a bystander. We know what a bystander is. That's clearly defined. We don't know the nuances of integral participation. And if we know that an integral participant does not need to themselves undertake conduct that's a violation of the rights, that's something that the jury needs to know. That's something that the jury needs to know in order to give a just result and actually do the complete analysis to decide whether or not this officer should be liable for the seizure that, you know, maybe he didn't commit. But didn't the court's instructions say the officer had to be an integral participant? Generally encompass the instruction that you wanted to have. Integral participation need not require that each officer's actions themselves rise to the level of a constitutional violation, but the instruction that was given, it seemed to cover that. I don't see anywhere in the language of the instruction that was given the jury being instructed that the actions of the officer need not themselves rise to the level of anything. That language is not in either of those instructions, 13 or 15. That was the language we would like to have had or something similar so that the jury would understand that we're not looking at a situation where the officer himself actually had to do something culpable, actually go out and grab the child or something like that, but that the officer's conduct could be some lesser level of conduct. In fact, it didn't even have to itself rise to the level of constitutional violation. The jury, not having been instructed of those nuances of the law in this area, couldn't have made the correct decision, I don't think. On that, I'd like to reserve unless there's further questions. Very well. Thank you, Counsel. Mr. Moore. Thank you, Your Honor. I would first like to address counsel's reading of the instruction number 13. He left out an important final phrase. He states that the acts of Officer Watanabe deprive Ms. Randall of her particular rights under the United States Constitution, quote, as explained in later instructions. Counsel, when he read number 13, left off that important last phrase. Did you object to his request to charge? Did I object to what? His request to charge. His request and instruction, did you object to it? I think so. I think I'm trying to recall the procedure. We exchanged those, and yes, we did make an objection. I would like to point out that the critical instruction number 15, the one that is the focus of the appeal, that that instruction is a verbatim copy of instruction number 12, submitted by the plaintiff with one exception. That exception is the language, integral participation does not require that each officer's actions themselves rise to the level of constitutional violation. In all other respects, plaintiff's proposed instruction number 12, or the instruction number 15 given by the court, mirrored and was an exact copy of plaintiff's proposed instruction number 12, submitted after the pretrial conference on February 5th before the commencement of the trial. With the exception of the one sentence about integral participation does not require that each officer's actions themselves rise to the level of a constitutional violation. There is nothing in the instruction that was given by Judge Carney to suggest anything to the contrary to that. The instruction, the language given in instruction number 15, drafted by or given by the court, contained the identical sentence submitted in plaintiff's proposed instruction number 12. Quote, Officer Watanabe must or was an integral participant in that removal, not a mere bystander. That's language proposed by plaintiff in plaintiff's instruction number 12. And that was the language given by Judge Carney. Well, assuming without deciding that the jury instructions regarding integral participation were insufficient, can you show that there was no prejudice here? Well, the issue is I think it's going to be yes or no, right? You would say yes, we can, and here's why. Yes, we can. Okay. So now explain why. Well, the evidence, I think what's important is the focus, and this is what the jury did focus on, is what Officer Watanabe, his knowledge and the nature of his participation. The evidence, I think, was pretty clear that the decision to remove the child had been made by Maisha Hammond before she even called the police department, and she was just going to confirm that Mr. Dulier was, in fact, living with plaintiff as plaintiff reported in the letter written to the county. And she testified, and there was some dispute about that, but she talked to her supervisor, and they said, well, if he's living there, we're removing the child. And so that decision was made, and they called the police department just to make sure that there was no problem, to make sure if Mr. Dulier was there that things remained under control. And Officer Watanabe and Officer Lopez's involvement was simply to do a protective sweep to make sure that Mr. Dulier was not there and just stand back and let Maisha Hammond do her work, conduct her investigation, make her decision, and basically keep the peace and make sure that nobody got out of hand, and that's what happened. And based upon that evidence, the jury found that that was not an integral participation because Officer Watanabe did not make any decisions. He simply just stood there, allowed Maisha Hammond to do her work. Is there any reason that the failure to intercede doctrine shouldn't apply to social workers or police officers? Well, there's some interesting language in the Montiel case, another district court's case, that points out the fact that there's no Ninth Circuit precedent that imposes such an obligation, and there's that language in that recent surjet where the Ninth Circuit held that where the officers made no independent decisions regarding protective custody. They could rely upon the determination made by social workers that the children were in imminent danger. And on the failure to intercede issue, wasn't addressed by plaintiff's counsel or appellant's counsel, I think the important issue is what Officer Watanabe knew. There was a lot of talk in the briefs about, well, maybe Mr. Goulet didn't do all these horrendous things, that the county knew about that and there was some question about what did or did not occur, but none of that was known to Officer Watanabe. All that Officer Watanabe knew was what Maisha Hammond chose to tell him. And I think, I mean, I couldn't say it any better when Officer Watanabe was asked during trial if he had any reason to disagree with Maisha Hammond, and his answer under oath was no. I mean, if this man, Charles Dulier, was guilty of the things he's accused of, and he had no reason to know that he wasn't guilty of them, and she was removing him because he spends his nights there, and he was, he has access to the child, he did, well, I have small children myself, and I certainly wouldn't want somebody like that around my children. So I think given the limited information he had, what he saw, there's no, there's just simply not a factual basis, or a legal basis, to give rise to any duty to have interceded into what the social worker was doing, who has been working on this with the other county social workers for a number of days before the date that they went out to the house. Well, what exact information did he have about the ex-husband to whom the child was given? The child was turned over. To the father? The father was called. He didn't know anything about him. All right, there was no information at all. No, other than he was the, just what he was told by Maisha Hammond. She had called the father, made arrangements for him to be, stand nearby, because she knew what she was going to do, and she basically reported and told Officer Watanabe what she was going to do, and she was told that, hey, we're here just to keep the peace. If there's a problem, if they don't comply, we're not doing anything. We're just here to keep the peace, to make sure nothing gets out of hand, nothing gets physical. And Officer Lopez made that clear to Maisha Hammond right from the get-go. Was there a defense of qualified immunity raised in this case? It was raised. It wasn't litigated. So unless the Court has any questions, thank you very much, Counsel. Mr. McMillan? First, to answer Your Honor's question about whether or not qualified immunity was litigated in this case, in fact, Judge Carney specifically set off the earlier set trial date so that the plaintiff defendants' motion for partial summary, or actually I think it was motion for summary judgment on the issue of qualified immunity could be heard. It was heard. It was decided against the defendants, and then we proceeded to trial. It was decided against them because? I'm sorry? Why was it decided against them? Because there were factual issues that had to be resolved? Was that it? I don't think it was factual issues necessarily. I think that it was more that the law delineating the rights that run between a parent and her child within the context of a child abuse investigation or a seizure of the child from the parent without a warrant are clearly established at that time, and then we proceeded to trial from there. In his order on summary judgment, he was unclear as to what his position was with respect to the failure to intercede claim, and that's how we ended up preparing potential instructions, a jury verdict form, our review of the law, and I would agree with defense or appellees on this point. We couldn't find any Ninth Circuit law, actually any law from any circuit that specifically said in the context of a child abuse investigation where we have a joint response with police and social workers that this duty to intervene comes to the fore, but we couldn't find a case that said it didn't either, and it made sense to us that it would come into play, especially in the context of this case where the officer specifically testified, yes, he knows about the rights that run between parents and children. He knows that you can't remove a child from the custody of its parent without first getting a warrant, lest there's an exigency, and I don't recall whether it was Miss Officer Watanabe or Officer Lopez who testified at trial that the city of Huntington Beach, in their experience, it takes five to ten minutes to get a temporary protective order from a judge on a phone call. So the issue that the appellees were addressing earlier in relation to the jury's specific findings, what the jury specifically found and how the jury specifically found that there were these good reasons to go ahead and detain the child, first of all, that's not reflected anywhere on the verdict form. All the verdict form says is, did Officer Watanabe violate her rights? Answer, no. So we can't really get into the minds of what the jury thought or how they got to that point here, but what we do know is that when we're looking at the issue of exigency, it involves much, much more than just these speculative concerns about how a boyfriend may come home or may not come home, whether or not he's going to be convicted or going to be found guilty of abusing his own child at some point in the future. Speculation doesn't cut it, and in a situation here where they inspect the home, there's nobody there, or rather the alleged perpetrator's not there, and the mom is actually saying he doesn't live here, I watched his dog because he works at night, and the officer can get a temporary protective order within five to ten minutes, and there's no indication that the perpetrator or alleged perpetrator is going to be coming home within the next five to ten minutes, there's no reason why they couldn't have called in and got a warrant. So in our view, under either theory, the integral participation theory or the failure to intercede theory, in our view, there should be a reversal. We think that there should be an obligation of an officer who knows the law, can see the circumstances on his own, and has his independent power to get a warrant, he should have to get a warrant. That's our view, unless Your Honors have further questions, that's it. Thank you very much, Counsel. Thank you to all the attorneys for their arguments today. We are now adjourned.
judges: D.W. Nelson, Owens, Korman